UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL SANTURE, #161394,

        Plaintiff,                      Case No. 2:11-CV-10193

v.                                          Honorable Denise Page Hood
                                             Magistrate Judge David R. Grand

MARK HATT,

        Defendant.
_____/

**REPORT AND RECOMMENDATION TO DENY DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (Doc. #13) WITHOUT PREJUDICE**

Defendant Mark Hatt's Motion for Summary Judgment (Doc. #13) was referred to the undersigned for a report and recommendation. Doc. #6; 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, the court recommends that the motion be denied without prejudice.

                                        I.        **BACKGROUND**

        A.        **The Underlying Incident**

This is a civil rights action brought by *pro se* Plaintiff Daniel Santure against Defendant Mark Hatt[1] pursuant to 42 U.S.C. §1983. Santure is a State of Michigan prisoner who, on December 28, 2009, was working in a prison shop under the supervision of Hatt, a prison maintenance supervisor. Compl., ¶¶3, 6. Santure was using an electric "grinding tool" or "grinding wheel" that was meant to handle wheels of five or fewer inches. *Id.*, ¶9. The machine's safety guard had been removed to accommodate a six-inch wheel, and it was missing

---

[1] Santure also named Jake DeWitt and Heidi Washington as defendants in this action, but they were dismissed by the court's Opinion and Order dated February 4, 2011 (Doc. #5).

its handle. *Id.*, ¶¶10, 12. Santure "asked defendant Hatt about the missing handle and was told to [use] the grinding wheel." *Id.*, ¶¶6, 11. Santure claims he "was cut deeply accross [sic] his left index and middle fingers" (though he does not specify how), and that he suffered nerve damage as a result. *Id.*, ¶¶7, 12. Santure claims that Hatt chided him about the incident, but gave him bandages. *Id.*, ¶13. Santure claims that Hatt was supposed to, but did not report his injury to prison officials. *Id.*, ¶15.

Santure claims that he returned to his cell and was later seen by a night nurse who "upon examining the lacerations…immediately arranged for [him] to be taken to the Emergency Room for further treatment." *Id.*, ¶17. Santure alleges that his visit to the Emergency Room angered Hatt because it would lead to a "write-up at the shop." *Id.*, ¶18. The next day, Hatt allegedly instructed Santure to use the same grinding tool, still missing its handle and safety guard, and with a wheel too large for its design. *Id.*, ¶19. Santure refused to use the wheel and asked to return to his cell. *Id.*, ¶20.

**B.**     **Grievance Procedures Followed by Santure**

    **i.**     **Santure's Step I and Step II Grievances**

As discussed below, the Michigan Department of Corrections ("MDOC") uses a multi-step process for prisoners to raise grievances regarding alleged violations of prison policies or conditions of their confinement. On December 31, 2009, Santure filed a Step I administrative grievance related to his injury, seeking compensation and to prevent the future use of equipment that lacked proper safety devices. *Id.*, ¶21; Ex. 2. The prison's response indicated that "the [] Maintenance Department has been instructed: 1. Not to allow prisoners to use equipment without proper safety devices intact. 2. Report all prisoner injuries, no matter how minute the injury. 3. Take the prisoner to Health Care no matter how minute the injury." Compl., ¶23; Ex. 2

(emphasis in original). Santure then filed a Step II grievance appeal (Grievance Identifier RGC10010001502F) by completing the top portion of Form CSJ-247B. Compl, ¶25; Ex. 3. When the Grievance Coordinator returned Santure's Step II appeal to him, the Step II Response section said "SEE ATTACHED," and a separate response page was provided. Compl., Exs. 3 and 4. The response stated that: (1) it "will not be condoned" for staff to remove safety devices from equipment; (2) the equipment in question had been removed from service and (3) "instructions" were issued to all maintenance staff. Compl., Ex. 4. The response also stated that when Santure was injured, he "was in fact offered health care and subsequently refused." *Id.*

### ii. Santure's Alleged Step III Grievance Appeal

Santure claims that on February 4, 2010, he filed a Step III grievance appeal by sending his completed Form CSJ-247B (apparently with the prison's attached Step II response) "to the Director's Office."[2] Compl., ¶¶30-32, pp.12 of 28, and Exs. 3 and 4; Doc. #14 (pp. 10-12) Santure Aff., ¶5. When he did not receive a response to his Step III appeal, Santure wrote to the Office of the Legislative Corrections Ombudsman.[3] Santure Aff., ¶10. It is unclear when Santure allegedly sent that communication. The court was not provided with a copy of the letter, and Santure offered conflicting dates for its mailing – "in May 2010," Santure br., p. 2, "on May 5, 2010," Santure Aff., ¶10, and on "4-2-2010," Compl., Ex. 6.1. At any rate, on May 27, 2010, the Ombudsman responded to whatever communication it received from Santure, and advised him to wait until he received "a third step response from the Director's Office" before proceeding further. Compl., Ex. 5. Santure claims that on September 19, 2010, he wrote to the

---

[2] The form's bottom portion is used for Step III appeals, and it instructs the prisoner to send that appeal to the "Director's Office, P.O. Box 30003, Lansing, Michigan, 48909." Compl., Ex. 3.

[3] Form CSJ-247B states: "if [the prisoner] find[s] the Step III Director's response unsatisfactory, [he has] the option of referring the grievance to the Office of the Legislative Corrections Ombudsman" and provides its address.

"Director's Office" to follow up on his Step III appeal, but received no response. Compl., ¶34, Ex. 6.1; Santure Aff., ¶¶7-8.  This action followed.

Hatt's position is that that the Director's Office never received the Step III appeal that Santure claims to have mailed on February 4, 2010.  Def. Motion, p. 8.  In support of his position, Hatt relies on the Affidavit of Richard D. Russell, Manager of the MDOC's Grievance Section.  Russell states that he "caused a search of the database relevant to Step III grievance appeals filed by [Santure]," and that the MDOC Grievance Tracking database "has no records concerning" Santure's Step III grievance.[4]  Doc. #13-1, Russell Aff., ¶15.

### C. Hatt's Summary Judgment Motion

On July 15, 2011, Hatt filed a motion for summary judgment in which he argues that because "no Step III grievance appeal was received" Santure failed to exhaust his available administrative remedies as he was required to do before filing his §1983 action.  Doc. #13, p. 8.  In his response, which is supported by his affidavit and the exhibits to his complaint, Santure claims that he did properly submit his Step III grievance, and thus did exhaust his available administrative remedies before filing this action.

### II. LEGAL STANDARDS

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The

---

[4] Russell's affidavit identifies the Step III grievance at issue as "RGC2010-01-0015-02f," Russell Aff., ¶15, when the CSJ-247B Form itself uses Identifier No. "RGC10010001502F". Compl., Ex. 3.  It is not clear whether Russell misstated the identifier, though it appears he may have; even if "RGC10…" is the same as "RGC2010…" the identifiers still differ by one digit ("0015" vs. "00015").  The difference, however, is immaterial because the search appears to have been performed for Santure's name/prisoner number, not for any particular grievance number. Russell Aff., ¶14, Attachment 2, Step III Grievance Report.

4

standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman v. Cuyahoga County Dep't of Children & Family Services*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

The summary judgment movant bears the initial burden of informing the court of the basis for its motion and identifying particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); Fed. R. Civ. P. 56(a) and (c). Once the moving party has met its burden of production on that matter, the party opposing the motion may not rest on its pleadings or on a hope that the trier of fact will disbelieve the movant's denial of a disputed fact. *Alexander*, 576 F.3d at 558; *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003). Rather, the nonmoving party must present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir.2009) (quoting *Anderson*, 477 U.S. at 252). In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

### III.     ANALYSIS

#### A.     The "Exhaustion" Requirement under the Prisoner Litigation Reform Act

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. §1983 must have first properly exhausted his available administrative remedies. 42 U.S.C. §1997e(a) ("[n]o action shall be brought with respect to prison conditions under §1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The *Jones* Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. The burden is therefore on the defendant to show that the plaintiff failed to properly exhaust his administrative remedies before filing the action. *Id. See also Kramer v. Wilkinson*, 226 Fed.Appx. 461, 462 (6th Cir. 2007) (the "affirmative defense [of exhaustion] may serve as a basis for dismissal only if raised and proven by the defendants.").

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Id.* at 218–19. The requirement is a stringent one. In *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 674 (6th Cir. 2009); *Vandiver v. Corr. Med. Servs.*, 326 F. App'x 885, 888 (6th Cir. 2009). For instance, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a §1983 action in federal court. *Woodford*, 548 U.S. at 90–93; *see* 42 U.S.C. § 1997e(a).

  **B.**  **Exhaustion of Prisoner Claims Under Michigan Law**

  MDOC Policy Directive 03.02.130 (effective July 9, 2007) (the "Directive") (available at www.michigan.gov/documents/corrections/03_02_130_200872_7) sets forth the applicable grievance procedures that must be followed for a prisoner to properly exhaust his claims about the conditions of his confinement. A brief overview of the grievance process is as follows: An inmate must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control. Directive, ¶P. If that does not resolve the issue, the inmate may proceed to Step I of the grievance process and submit a completed grievance form to the prison's designated Step I Grievance Coordinator within five business days of the attempted oral resolution. *Id.*, ¶¶P, V. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by completing and sending Form CSJ-247B to the designated Step II Grievance Coordinator within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶BB. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.*, ¶FF. The Step III appeal is made by completing the bottom portion of Form CSJ-247B. *Id.* The form indicates that Step III appeals are to be sent to the "Director's Office, P.O. Box 3003, Lansing, Michigan, 48909." Compl., Ex. 3. It must be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. Directive, ¶FF. The Directive states that "[e]ach grievance received at Step III, including those which may be rejected, shall be logged on a computerized grievance tracking system." *Id.*, ¶GG.

7

### C. Based on the Present Record, Hatt Has Not Met His Burden of Establishing that Santure Failed to Exhaust His Available Administrative Remedies

Hatt's motion rests on his claim that "no Step III grievance appeal **was received**" by the Director related to the incident which is the subject of Santure's complaint. Doc. #13, p. 8 (emphasis added). In support, Hatt relies on Russell's affidavit and the MDOC Prisoner Step III Grievance Report attached thereto which does not list the Grievance Identifier for the appeal Santure claims to have filed. *Cf.* Compl., Ex. 3 with Doc. #13-1, p. 14. From that evidence, Hatt concludes that "Santure has not properly exhausted under *Woodford v. Ngo*." *Id.*

Certainly, if the Director did not receive a Step III appeal because Santure failed to send one to her, Hatt would be correct. Directive, ¶FF; *Woodford v. Ngo*, 548 U.S. 81, 90; *Scott*, 577 F.3d at 674; 42 U.S.C. §1997e(a). However, the Directive provides that grievance appeals "shall be considered filed on the date sent," Directive, ¶S, and summary judgment is not appropriate when the plaintiff presents sufficient evidence to raise a material question of fact on that matter. For example, in *Sims v. Piper*, 2008 WL 3318746 (E.D. Mich. Aug. 8, 2008), the defendant moved to dismiss a prisoner civil rights complaint based on the grievance coordinator's averment that the MDOC grievance director never received the plaintiff's Step III appeal. In response, the plaintiff presented a copy of the Step III appeal he claimed to have sent, along with an MDOC receipt reflecting a disbursement from his prisoner account for "Postage, Director's Office" for mailing the appeal. *Sims* at *4. In light of that evidence, the court found that the defendant had "not met his burden of proving by a preponderance of the evidence that Plaintiff did not properly exhaust his administrative remedies …" *Id.* *See also Murphy v. Lockhart*, 2011 WL 4576035, at *5 (E.D. Mich. Jan. 31, 2011) (finding a genuine issue of fact about whether prisoner submitted a Step III appeal), *rev'd in part on other grounds*, 2011 WL 4577162 (E.D. Mich. Sept. 30, 2011).

8

Here, although Santure did not produce postage/mailing receipts, more than a "mere scintilla of evidence" supports his contention that he filed a Step III appeal. *Anderson*, 477 U.S. at 252. Santure specifically alleges that on February 4, 2010, he "mailed a Step III appeal to the director's office in Lansing, Mich.," Santure Aff., ¶5, and he has produced a copy of that appeal. Compl., Exs. 3 and 4. The appeal form appears to be complete, and its second page appears to have been signed and dated "2-4-10". *Id.* Other evidence also tends to corroborate his position. For instance, the Ombudsman's May 27, 2010 response letter advised Santure to wait until "you have a third step response from the Director's Office" before proceeding further. Compl., Ex. 5. This suggests that Santure's precipitating letter (a copy of which is not before the court) referenced the filing of a Step III appeal. Moreover, months later when Santure still had not received a Step III response (which of course would be the case if the Director had not received his Step III appeal), he wrote to the Director and stated: "[o]n 2-4-2010 I mailed a copy of Grievance RGC-10-01-00015-02F to your office for THIRD STEP APPEAL." Compl., Ex. 6.1. It appears that the Director did not respond to Santure's letter, and did not advise him that her office had no record of his Step III appeal. Santure Aff., ¶8. After another four months passed (approximately twelve months in total from the date of his Step I grievance), Santure filed this action. Santure's actions appear inconsistent with those of someone who "wish[ed] to bypass the administrative process..." Hatt br., pp. 6-7 (quoting *Woodford*, 548 U.S. at 95).

While Hatt is right to note that noncompliance with the Directive's procedural steps must carry a meaningful sanction, *id.*, taking the present evidence and its reasonable inferences in the light most favorable to Santure, there remains a question about whether he complied with the Step III grievance procedures. Accordingly, Hatt has not met his burden of establishing that Santure did not properly exhaust his administrative remedies. *Jones*, 549 U.S. at 216; *Kramer*,

9

226 Fed.Appx. at 462; *Sims,* 2008 WL 3318746 at *4; *Murphy*, 2011 WL 4576035, at *5. *Cf. King v. Bell*, 2009 WL 4646079, at *3 (E.D. Mich. Dec. 7, 2009) (summary judgment granted for failure to exhaust remedies when MDOC grievance database showed no Step III filing had been made and plaintiff provided no evidence to rebut that showing).

### IV. CONCLUSION

While Santure has far from "proven beyond any doubt," *see* Santure br., p. 5, that he timely sent his Step III appeal to the Director's Office[5], on the present record, he has raised a material question of fact about that matter. Accordingly, IT IS RECOMMENDED that Hatt's motion for summary judgment (Doc. #13) be DENIED WITHOUT PREJUDICE.

Dated: December 30, 2011                s/ David R. Grand
                                        DAVID R. GRAND
                                        UNITED STATES MAGISTRATE JUDGE

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

---

[5] Clearly, the fact that Santure's MDOC Prisoner Step III Grievance Report does not list Grievance RGC10010001502F carries contrary weight. The existence or absence of disbursement/postage receipts, and the contents of Santure's unproduced letter to the Ombudsman may also shed light on the matter.

10

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.