UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL SANTURE,

                Plaintiff,           Case No. 11-10193
                                            Honorable Denise Page Hood
v.                                            Magistrate Judge David R. Grand

MARK HATT,

                Defendant.
_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT [30]
AND TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [46]**

Before the court are Defendant Mark Hatt's Second Motion for Summary Judgment [30] and Plaintiff Daniel Santure's Motion for Summary Judgment [46]. An Order of Reference [22] was entered on January 10, 2012, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b).

Generally, the court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* L.R. 7.1(f). Here, the court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

**I.   RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's Second Motion for Summary Judgment [30] be **GRANTED** and Plaintiff's Motion for Summary Judgment [46] be **DENIED**.

**II.   REPORT**

    **A.   Factual Background**

This is a civil rights action brought by *pro se* Plaintiff Daniel Santure ("Santure") against

Defendant Mark Hatt[1] ("Hatt") pursuant to 42 U.S.C. §1983. Santure is a State of Michigan prisoner who currently is confined at the Parnall Correctional Facility in Jackson, Michigan. On December 28, 2009, Santure allegedly was injured while working in a prison shop at Egeler Correctional Facility under the supervision of Hatt, a prison maintenance mechanic. (Doc. #1 at ¶¶2, 3, 6). On the date in question, Santure was using an electric "grinding tool" or "grinding wheel" that was meant to handle wheels of five or fewer inches. (*Id.* at ¶9). The machine's safety guard had been removed to accommodate a six-inch wheel, however, and it was missing its handle. (*Id.* at ¶10). Santure alleges that he "asked defendant Hatt about the missing handle and was told to USE the grinding wheel." (*Id.* at ¶11). Santure does not allege, however, that Hatt was the individual who removed the safety guard or the handle, or that they were removed for the purpose of causing him injury.

Santure claims that, while using the grinding wheel, he "was cut deeply across his left index and middle fingers" (though he does not specify how), and that he suffered "nerve damage" as a result of this injury. (*Id.* at ¶¶7, 12). Santure further alleges that Hatt chided him about the incident, but gave him bandages. (*Id.* at ¶¶13, 15). According to Santure, Hatt was supposed to report this injury to prison officials, but did not. (*Id.* at ¶15).

Santure asserts that he returned to his cell and was seen by a night nurse who "upon examining the lacerations . . . immediately arranged for [him] to be taken to the Emergency Room for further treatment." (*Id.* at ¶17). Santure alleges that, the next day, Hatt became angry upon learning that Santure had visited the Emergency Room, saying that it would lead to a "write-up at the shop." (*Id.* at ¶18). The next day, Hatt allegedly instructed Santure to use the same grinding tool, still missing its handle and safety guard, and with a wheel too large for its

---

[1] Santure also named Jake DeWitt and Heidi Washington as defendants in this action, but they were dismissed by the court's February 4, 2011 Opinion and Order. (Doc. #5).

2

design. (*Id.* at ¶19). Santure alleges that he refused to use the wheel and asked to return to his cell. (*Id.* at ¶20).

Hatt's version of events is somewhat different than Santure's. According to Hatt, on the morning in question, he was installing caging in the Quartermaster area, along with fellow Maintenance Mechanic Mickey Ellison ("Ellison"), Building Trades Mechanic Dave Bannester ("Bannester"), and prison workers Santure, Marshall (#142434), and Ozenbaugh (#264237). (Doc. #30 at Ex. B, ¶5). Hatt claims that he asked for volunteers to cut some iron, and Santure volunteered, indicating that he had experience using this type of grinder. (*Id.* at Ex. B, ¶¶4, 6, 7). Hatt claims he then instructed Santure on how to use the grinder, explaining that he needed to be careful because the grinder did not have a guard on it, and that if he relaxed his index finger, there was a chance that the finger could come in contact with the blade. (*Id.* at Ex. B, ¶¶7-8). Hatt claims he told Santure that if he didn't want to cut the iron, he (Hatt) would, but Santure said that he would make the cuts. (*Id.* at Ex. B, ¶9).

According to Hatt, as Santure made the first cut, Hatt stopped him and provided further instruction as to the safe way for the cut to fall away from the blade. (*Id.* at Ex. B, ¶10). Hatt then had Bannester supervise Santure in making a cut and left the area to use the restroom. (*Id.* at Ex. B, ¶11). When Hatt returned from the restroom, Santure stated that he had scratched his hand, but refused to show Hatt the extent of the scratch. (*Id.* at Ex. B, ¶12). According to Hatt, Ellison had already provided Santure with a Band-Aid, and Santure indicated that he did not need further medical treatment. (*Id.*). Bannester and Ellison both submitted sworn affidavits corroborating Hatt's assertions that Santure volunteered to use the grinder, was warned about the missing guard, was provided with instructions on the proper way to make the cuts, and suffered

3

only a small cut (which did not even appear to be bleeding).[2] (*Id.* at Ex. C, D).

### B. Procedural Background

On January 14, 2011, Santure filed his Complaint, alleging that Hatt violated his Eighth Amendment right to be free from cruel and unusual punishment. (Doc. #1). In terms of relief requested, Santure seeks a declaratory judgment, injunctive relief requiring Hatt to be retrained and recertified, and an unspecified amount of compensatory and punitive damages. (*Id.* at 8-9).

On July 15, 2011, Hatt filed a Motion for Summary Judgment, in which he argued that summary judgment was appropriate because Santure failed to exhaust his administrative remedies. (Doc. #13). On December 30, 2011, this court issued a Report and Recommendation, finding that a genuine issue of material fact existed as to whether Santure had, in fact, exhausted his available administrative remedies, and recommending that Hatt's motion be denied without prejudice. (Doc. #21). The District Court accepted that Report and Recommendation on March 2, 2012. (Doc. #25).

On March 16, 2012, Hatt filed his Second Motion for Summary Judgment, along with supporting exhibits and affidavits.[3] (Doc. #30). Santure filed a response (Doc. #38), and Hatt filed a reply (Doc. #39). On July 5, 2012, Santure filed his own Motion for Summary Judgment.

---

[2] According to Bannester, Santure had a cut on one finger that appeared to be approximately one-quarter inch in length. (*Id.* at Ex. C, ¶10). Bannester did not observe any bleeding from the cut. (*Id*). Ellison attested that the cut appeared to be no larger than one-half inch in length. (*Id.* at Ex. D, ¶10). Ellison further stated that if the injury had been anything more than just a superficial cut, Santure would have been sent to Healthcare regardless of his desire to avoid medical treatment. (*Id.* at Ex. D, ¶11).

[3] Simultaneously, Hatt filed a Second Motion to Stay Discovery. (Doc. #31). Rather than file a timely response to that motion, Santure filed a competing Motion to Compel Discovery (Doc. #37) on April 16, 2012, to which Hatt responded on April 30, 2012 (Doc. #40). Upon review of these motions, it does not appear to the court that Santure is entitled to the discovery he seeks (at least from a procedural perspective), nor does it appear that the discovery sought by Santure has any bearing on the issues presently before the court. In any event, the discovery motions are rendered moot by this court's instant recommendation.

(Doc. #46). Hatt filed a response on July 10, 2012 (Doc. #48), and Santure filed a reply on July 27, 2012 (Doc. #49). Also on July 27, 2012, Santure submitted a 35-page response to the court's Notice of Determination of Motion Without Oral Argument.[4] (Doc. #51). These cross-motions for summary judgment are now ready for a report and recommendation.

### C.     Standard of Review

When reviewing cross-motions for summary judgment, the court must assess each motion on its own merits. *See Federal Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 415 F.3d 487, 493 (6th Cir. 2005). Federal Rule of Civil Procedure 56 provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of informing the court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its

---

[4] There is no basis in the court rules for a response to the court's Notice. Because Santure is proceeding *pro se*, however, the court will not strike Santure's response but, rather, will consider the arguments advanced in that pleading in ruling on the pending motions.

5

burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989)). Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id*. (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id*. at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

A moving party with the burden of proof (typically the plaintiff) faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). As set forth above, the moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (internal citations omitted). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Harris v. Kowalski*, 2006 WL 1313863, at *3 (W.D. Mich. May 12, 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999)).

**D.     Analysis**

*1.     The Legal Standard Applicable to an Eighth Amendment Claim*

Santure asserts that Hatt's conduct violated his rights under the Cruel and Unusual Punishment Clause of the Eighth Amendment, which prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain" upon inmates. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (internal citations omitted). An Eighth Amendment claim has two components, one objective and one subjective. To meet the objective prong, a plaintiff must demonstrate that he has been incarcerated under conditions posing a substantial risk of serious harm. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component is often described as the denial of "the minimal civilized measure of life's necessities." *Berryman v. Johnson*, 1991 WL 150808, at *10 (6th Cir. Aug. 6, 1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

To meet the subjective prong, a plaintiff must demonstrate that the defendant acted with deliberate indifference. *See Jones v. Michigan*, 698 F. Supp. 2d 905, 915 (E.D. Mich. 2010). More specifically, a plaintiff must demonstrate that a prison official knew of and disregarded an excessive risk to inmate health or safety by showing that (1) the official was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and (2) the official actually drew the inference. *See Farmer*, 511 U.S. at 837. Thus, "deliberate indifference describes a state of mind more blameworthy than negligence," and requires "more than ordinary lack of due care for the prisoner's interests or safety." *Id.* at 835 (internal citations omitted). "[A]ccidents, mistakes, and other types of negligence are not constitutional violations merely because the victim is a prisoner." *Bigelow v. McQuiggin*, 2012 WL 113818, at *4 (W.D. Mich. Jan. 13, 2012). In sum, to establish that Hatt acted with deliberate indifference, Santure must "present evidence from which a trier of fact could conclude 'that the official was subjectively

7

aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 829, 847).

Santure's action concerns prison workplace safety. Although neither party pointed to a definitive pronouncement on this topic by the Sixth Circuit, other circuits have addressed the issue head on. Those courts make a clear distinction between negligently placing an inmate worker in harm's way and doing so with "deliberate indifference," a familiar concept in all of the circuits. In the context of prison work assignments, courts recognize that prison officials run afoul of the Eighth Amendment only when they have "'knowingly compel[led prisoners] to perform physical labor which is beyond their strength, or which constitutes a danger to their lives or health, or which is unduly painful.'" *Jones*, 698 F. Supp. 2d at 914 (quoting *Ray v. Mabry*, 556 F.2d 881, 882 (8th Cir. 1977)).

Proving that a defendant had a sufficiently culpable mental state to make him liable for deliberate indifference is the plaintiff's burden. *See Jones,* 698 F. Supp. 2d at 914. This burden can be met in the "usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842 (internal citation omitted).

### a. Deliberate Indifference

As set forth above, assuming that the Sixth Circuit would agree that the intentional placing of prisoners in dangerous workplace surroundings can violate the Eighth Amendment, Santure would still need to establish that Hatt acted with the requisite mental culpability, which must be more than negligence. Essentially, Santure alleges that by merely having him use the grinder – which was missing its safety guard and handle – Hatt necessarily acted with a sufficiently culpable state of mind to support a claim of deliberate indifference. There are

several flaws to this claim.

First, the evidence that Santure was *required* to use the grinder on the day in question is, at best, equivocal. Santure denies that he volunteered to operate the grinder, alleging instead that he was "ordered" to do so. (Doc. #1 at ¶37; Doc. #38 at 6). Hatt has submitted a sworn affidavit, however, attesting that he "asked for volunteers to cut the iron [with the grinder] and Santure said he would." (Doc. #30 at Ex. B, ¶6). The sworn affidavits of both Bannester and Ellison corroborate Hatt's assertion. (*Id.* at Ex. C, ¶4 and Ex. D, ¶4). Typically, Santure's own, unsworn assertions would not be sufficient to create a genuine issue of material fact. *See e.g., Pollock v. Pollock*, 154 F.3d 601, 612 (6th Cir. 1998). *Cf. El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (noting that only a "verified complaint" "signed [] under penalty of perjury pursuant to 28 U.S.C. §1746" carries the same weight as an affidavit for purposes of summary judgment). Thus, the only evidence properly before the court establishes that Santure was not *required* to operate the machinery at issue.[5]

Regardless, however, even if Hatt did demand that Santure use the grinder on the day in question, it does not necessarily follow that Hatt acted with the requisite mental culpability (i.e., that he disregarded the risk posed by the grinder and failed to take reasonable measures to abate that risk). *See Greene*, 361 F.3d at 294. Several courts have held that merely exposing an inmate to a similar potentially dangerous workplace condition does not rise to a constitutional violation, even where prison officials are alleged to have known of the condition. For example, in *Warren v. Missouri*, 995 F.2d 130 (8th Cir. 1993), the court considered an inmate's claim that he was injured when a board "kicked back" from a table saw that he was operating at the prison's furniture factory. The inmate alleged that the defendants were deliberately indifferent in failing

---

[5] The court also notes that, according to Santure, he was ordered to use the same machine the following day, but refused to do so. (Doc. #1 at ¶¶19-20).

to equip the saw with an anti-kickback feature, despite their knowledge of twenty-nine similar table saw injuries in the five years preceding the inmate's injury. The defendants introduced evidence that the machine had been operated more than 28,600 man hours during that period, and the Eighth Circuit held that, "Even assuming [] defendants had knowledge of the allegedly similar prior accidents…this showing falls far short of creating a genuine issue of deliberate indifference to a serious issue of work place safety." *Id.*

Similarly, in *Arnold v. South Carolina Dep't of Corr.*, 843 F. Supp. 110 (D.S.C. 1994), an inmate working in the prison kitchen was burned by a 25-gallon pot that tipped downward. The inmate alleged that the kitchen supervisor had been informed that the pot was faulty, and that the supervisor said there was not time to fix it. The district court held that there was no evidence that the defendants possessed the requisite "culpable state of mind" in failing to repair the pot and, at best, the inmate had offered evidence showing only negligence. *Id.* at 113.

In contrast, in *Alexander v. Barefield*, 2007 WL 1655383 (N.D. Fla. June 7, 2007), the court held that a genuine issue of material fact existed, precluding summary judgment on the plaintiff's deliberate indifference claim. In that case, one inmate was attaching razor wire to the rail of a fence while atop a twelve foot ladder. The ladder displayed a manufacturer's warning prohibiting more than one occupant. When the defendant ordered the plaintiff to climb the ladder to help the other inmate, the plaintiff told him that the ladder was broken, that it would not hold two people, and that it was unsafe for him to climb it. *Id.* at *1. The defendant told the plaintiff, "Get your [expletive] up there before I lock you up." *Id.* After the plaintiff climbed the ladder, it collapsed, and the plaintiff fell nine feet to the ground, injuring his back. *Id.*

The *Alexander* court noted that "mere knowledge by an official of infirm conditions does not establish deliberate indifference; it must also be demonstrated that, with knowledge of the

10

infirm conditions, the official knowingly or recklessly declined to take actions that would have improved the conditions." *Id.* at *4. In that case, the court concluded that the defendant's actions sufficiently described "an attitude of deliberate indifference," because the defendant knew of and disregarded an excessive risk to the plaintiff's health or safety. *Id.*

In this case, there is no dispute that Santure knew the grinder's guard and handle were missing before he used it. Moreover, the evidence presented – including three sworn affidavits – establishes that Santure was advised to be careful when operating the equipment, and was provided with instruction on how to properly and safely make the cuts. There were five witnesses to the incident – three prison employees and two inmates. All three of the prison employees submitted sworn affidavits attesting to the steps taken by Hatt to abate any danger. (Doc. #30 at Ex. B, C, D). Santure did not present <u>any</u> evidence contradicting this sworn testimony: although he submitted his own declaration (Doc. #51 at Ex. 21), he did not address these specific issues, and he did not submit affidavits or declarations from the two inmates who witnessed the events in question.[6] Rather, on these points he simply relies on unsworn assertions in his complaint and briefs. At the summary judgment stage, this is simply insufficient; Santure's own unsworn allegations – which are contradicted by other proper evidence – do not suffice to create a genuine issue of material fact.[7] *See supra* at 5-6. *See also Smit v. Meyer*, 461 Fed. Appx. 503, 505 (6th Cir. 2012); *Alexander*, 576 F.3d at 558 ("'failure to present any

---

[6] Although Santure asserts that he cannot communicate with these inmates "because they are inmates" (Doc. #51 at 22), he was able to communicate with inmate Koch (#282600), who purportedly observed the extent of Santure's finger injury and submitted a declaration on that issue. (Doc. #51 at Ex. 19). Thus, Santure apparently was able to obtain and present affidavits in circumstances when he believed doing so would be beneficial to him.

[7] As set forth above, Santure also has a motion to compel pending before this court. (Doc. #37). However, the discovery at issue in that motion appears to be both improper (from a procedural perspective) and irrelevant (from a substantive perspective). There is no indication that giving Santure the opportunity to take additional discovery would have an impact on the underlying legal issues raised by Hatt's dispositive motion.

11

evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'").

Santure points to Operating Procedure 04.03.101, which provides that supervisors must "remove[] immediately from use machines, tools, personal protective devices and other equipment that are unsafe due to missing safety devices, damage or excessive wear." (Doc. #38 at Ex. 9). By Hatt's own admission, he was aware that the grinder was missing its guard and handle for approximately three to five days prior to Santure's injury and, thus, there appears to be no dispute but that this Operating Procedure was violated. (*Id.* at Ex. 7, p. 3). Hatt's admission notwithstanding, it does not necessarily follow that this policy violation amounted to a violation of Santure's constitutional rights. *See Jones v. Caruso*, 2011 WL 3740578, at *10 (W.D. Mich. Aug. 24, 2011) ("Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation."). At most, the evidence establishes that Hatt was negligent in permitting – or even requiring – Santure to use a grinder that was missing its guard and handle. Santure does not allege that Hatt was the individual who removed the safety guard or the handle, or that they were removed for the purpose of causing him injury. Accordingly, Santure has not alleged or established the requisite degree of mental culpability required to succeed on a deliberate indifference claim and, thus, summary judgment is appropriate.

### b. De Minimis Injury

The United States Supreme Court has recently held that it is improper to dismiss an inmate's excessive force claim on the basis that he suffered only *de minimis* injuries. *See Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010). However, where the challenge is to the inmate's conditions of confinement, a *de minimis* injury will not suffice. *See, e.g.*, *Schoelch v. Mitchell*,

625 F.3d 1041, 1046-47 (8th Cir. 2010) ("The objective standard that must be satisfied in a conditions-of-confinement claim differs from that applicable in the excessive force context, where the malicious and sadistic use of force by prison officials always violates "contemporary standards of decency.") (citing *Wilkins*, 130 S.Ct. at 1178).

Seizing on that distinction, Hatt argues that in this conditions of confinement case he is entitled to summary judgment because Santure suffered only a superficial laceration, which is *de minimis*. (Doc. #30 at 12-14). In response, Santure alleges that he "suffered lacerations to his left index and middle fingers and suffered nerve damage as a result of these lacerations." (Doc. #1 at ¶7). A review of the evidence presented makes clear that Santure's alleged injury is insufficient to permit recovery.

As an initial matter, although Santure now alleges that he suffered lacerations on *two* fingers, *e.g.*, Doc. #1, ¶¶7, 12, the relevant medical records (along with the sworn affidavits of Bannester and Ellison, both of whom observed Santure's injury) show that only Santure's left index finger was cut. (Doc. #1 at 18 ("Cut L 2nd finger"); Doc. #30 at Ex. E ("Inmate seen in ER for laceration to L pointer finger"), Ex. F ("Inmate states he cut his finger on grinder at work today"), Ex. C, ¶10, and Ex. D, ¶10).[8] Even the declaration of inmate Koch, submitted by Plaintiff, describes an injury to only one finger. (Doc. #51 at Ex. 19). Moreover, Santure admits

---

[8] In the face of this evidence, Santure tries to backtrack on his prior assertions. Whereas he had previously claimed that he "was ***cut deeply*** accross [sic] his ***left index and middle fingers***" (Doc. #1, ¶12), he now argues that "'TWO' fingers were cut. The medical records state 'only one' because the second finger is the one that had the ¼-inch or ½-inch, non-bleeding cut referred to by Bannester and Ellison…[which] 'only needed a bandaid.' The index or pointer finger was severely [sic] lacerated and should have received sutures as the nurse stated." (Doc. #46 at 21). At any rate, the unsworn statements by Santure are insufficient to create a material question of fact that would preclude granting Hatt's properly supported summary judgment motion. *See supra* at 9, 11.

13

that his wound did not actually require sutures.[9] (Doc. #46 at 21 (alleging that the wound "should have received sutures"); Doc. #51 at 10). Rather, medical records from shortly after the incident show that Santure's cut was rinsed with sterile water, cleaned with Betadine, treated with an antibiotic ointment, and covered with a Band-Aid.[10] (Doc. #1 at 18).

In sum, Hatt presented the court with medical evidence, corroborated by sworn affidavits of other witnesses, which together shows, at worst, a cut on Santure's finger that was treated by medical professionals with antibiotic ointment and a Band-Aid. In response, Santure presented only his unsworn assertions in his complaint and briefs, along with the declaration of a fellow inmate (who described the cut as "pretty nasty"). This is insufficient to raise a material question of fact.

Courts have consistently held that injuries similar to those suffered by Santure are *de minimis* and, thus, do not give rise to an Eighth Amendment claim. *See, e.g., Corsetti v. Tessmer*, 41 Fed. Appx. 753, 755 (6th Cir. 2002) (two small bruises and minor cuts were *de minimis* injury); *Harris v. Heyn*, 2011 WL 6309470, at *3 (E.D. Mich. Dec. 15, 2011) ("Minor cuts are *de minimis* injuries."); *Lockett v. Suardini*, 526 F.3d 866, 876 (6th Cir. 2008) (minor cuts and bruises do not support Eighth Amendment claim). Courts have even held that cuts which were actually sutured were insufficient injuries to state an Eighth Amendment claim. *See, e.g., Bynum v. Thiroway*, 2008 WL 2704619, at *5 (M.D. Pa. July 7, 2008) ("Plaintiff did not sustain a serious injury. The head laceration ultimately required only a few sutures."); *Douglas v.*

---

[9] Although Santure points to a December 28, 2009 medical record, in which a nurse suggested that he be referred to a medical services provider (MSP) because his cut might have been a "wound that needed suturing" (Doc. #30 at Ex. F), it is clear that Santure's finger was not actually sutured by any of the nurses or doctors who saw him.

[10] Although Santure now alleges that he suffered "nerve damage" as a result of the cut, the medical records reflecting his complaints of "finger numbness [that] started after he had traumatic superficial finger tip cut" indicate that the numbness was in his ***right*** index finger, not the left index finger (which is the injury at issue). (Doc. #30 at Ex. H).

14

*Skellie*, 2009 WL 935806, at *12 (N.D.N.Y. Apr. 3, 2009) (plaintiff's injury, a one half inch laceration that required three stitches, was "not significant").

Here, where the evidence establishes that Santure's injury was nothing more than a superficial laceration, less than one inch in length, which was not sutured but, rather, was merely cleaned and treated with anti-bacterial ointment and a Band-Aid, he cannot sustain an Eighth Amendment claim. Moreover, based on the above case law, the court would reach the same conclusion even if Santure's wound had actually been sutured as he suggests should have happened.

### 2. *Qualified Immunity*

Hatt also argues that because his actions were objectively reasonable under the circumstances, and because he did not violate Santure's clearly established constitutional rights, Santure's claims are barred by the doctrine of qualified immunity. (Doc. #30 at 15-18).

Under the doctrine of qualified immunity, governmental officials performing discretionary functions are shielded from civil liability unless their conduct violates a clearly established constitutional right. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is premised upon the avoidance of unnecessary burdens of litigation, and therefore the privilege is an immunity from suit and not a mere defense to liability. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). Determining the applicability of qualified immunity requires a two-step inquiry into whether the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established. *See Saucier*, 533 U.S. at 201. In conducting this inquiry, the court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see also Bishop v.*

15

*Hackel*, 636 F.3d 757, 772 (6th Cir. 2011). With respect to the second prong of the test for qualified immunity, "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation that he confronted." *Saucier*, 533 U.S. at 202.

In this case, for all of the reasons discussed above, Santure has not established an Eighth Amendment violation and, thus, cannot satisfy the first prong of the qualified immunity standard. And, even if Santure could overcome that hurdle, he cannot satisfy the second prong of the qualified immunity test because he was not deprived of a *clearly established* constitutional right. Considering this issue in light of *Saucier*, the relevant inquiry is whether it would be clear to a reasonable official in Hatt's place that Santure had a constitutional right not to be put to work on a piece of equipment whose safety mechanism had been removed.

But Santure cannot win that argument for a few reasons. First, Santure has the constitutional right to be free from treatment that is *deliberately indifferent* to his health and safety, not from treatment that is merely *negligent* in that regard. As explained above, having Santure use the equipment in question at best falls into the latter category. Because no clearly protected constitutional right is implicated by the facts alleged by Santure, Hatt necessarily could not have known that his actions violated such a right.

Santure's citation to several cases for the general proposition that prison officials have a duty to provide inmates with safe working conditions and equipment is unavailing. (Doc. #38 at 16-17). The bulk of these cases are state court negligence cases, not §1983 cases alleging a violation of the Eighth Amendment, and mere negligence is insufficient to establish an Eighth Amendment violation. The court could find no Supreme Court or Sixth Circuit decisions dealing with injuries to a prisoner-worker under the Eighth Amendment. And, at least one other district

16

court has explicitly recognized that "whether the Eighth Amendment even applies to work-related prison injuries resulting from malfunctioning equipment is questionable." *Arnold*, 843 F. Supp. at 114 (citing *Warren*, 754 F. Supp. at 152). It can hardly be said that any reasonable prison work supervisor would have known that permitting (or even requiring) Santure to operate a grinder that was missing its guard and handle would constitute constitutionally-actionable deliberate indifference. Indeed, "Qualified immunity is designed to guard against claims grounded in precisely these sorts of uncertain legal principles." *Aaron v. Kimmel*, 2012 WL 2526961, at *5 (E.D. Mich. June 29, 2012). Thus, even if Santure had made out an Eighth Amendment claim, Hatt would be entitled to qualified immunity because it has not been clearly established that the Eighth Amendment guarantees a prisoner a safe work environment, free from use of equipment missing one of its safety features. *See Arnold*, 843 F. Supp. at 114.[11]

Lastly, Santure argues that Hatt is not entitled to qualified immunity because he knowingly violated Michigan Department of Corrections Policy Directive 04.03.101(N), which requires that supervisors "remove immediately from use machines, tools, personal protective devices and other equipment that are unsafe due to missing safety devices, damage or excessive wear." (Doc. #38 at Ex. 8). Although it appears that Hatt did in fact violate MDOC policy in permitting Santure to operate the cutoff grinder with its guard missing, it does not necessarily follow that he violated Santure's established constitutional rights in doing so. Courts have

---

[11] Hatt also correctly argues that because Santure is no longer incarcerated at Egeler Correctional Facility (where the alleged injury occurred), his claim for declaratory and injunctive relief is moot. (Doc. #30 at 14-15). *See Henderson v. Martin*, 73 F. App'x 115, 117 (6th Cir. 2003) (prisoner's claim for injunctive relief against prison officials became moot when prisoner was transferred from the prison of which he complained to a different facility); *Becker v. Montgomery*, 43 F. App'x 914, 915 (6th Cir. 2002) ("A prisoner's request for injunctive and declaratory relief from corrections officials is moot upon his transfer to a different facility."); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("to the extent Kensu seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution that searched his mail").

17

concluded that the fact that an official's actions might have violated *policy* does not in and of itself establish a constitutional violation. *See Jones*, 2011 WL 3740578, at *10; *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992). The Supreme Court has held that, "Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer*, 468 U.S. 183, 194 (1984). Thus, Santure's argument that Hatt's mere policy violation strips him of qualified immunity fails.[12]

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Hatt's Second Motion for Summary Judgment [30] be **GRANTED** and Santure's Motion for Summary Judgment [46] be **DENIED**.


Dated: September 24, 2012          s/David R. Grand
Ann Arbor, Michigan                 DAVID R. GRAND
                                    United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any

---

[12] In his reply brief, Santure also asserts that, "Hatt has continued to evade the issue of 'Retaliation.'" (Doc. #49 at 5). Although a bit unclear, it appears that Santure is alleging that he was removed from his prison work assignment because he sought medical treatment for his finger laceration. (*Id.*). Santure has not pled a claim for retaliation, however, so there was no need for Hatt to address this issue in his motion.

further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 24, 2012.

                                            s/Felicia M. Moses
                                            FELICIA M. MOSES
                                            Case Manager